IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


THOMAS L. BOGGIO,

                    Plaintiff,

        Vs.                                    No. 07-4067-SAC

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

                    Defendant.


MEMORANDUM AND ORDER

        This Employee Retirement Income Security Act of 1974

("ERISA") case comes before the court on the motion to alter and amend

judgment (Dk. 38) filed by the defendant Hartford Life and Accident

Insurance Company ("Hartford") and on the motion for prejudgment interest

(Dk. 39) filed by the plaintiff Thomas L. Boggio ("Boggio").  The plaintiff filed

this ERISA action challenging "the plan administrator's decision to

terminate his long-term disability benefits."  (Dk. 36, p. 1).  On March 25,

2009, the court filed its order deciding the parties' cross motions for

summary judgment.  (Dk. 36).  The court denied Hartford's motion and

granted in part Boggio's motion.  (Dk. 36, p. 53).  The time for filing briefs

on the two pending motions has passed, and the court submits the

following as its ruling.

**MOTION TO ALTER AND AMEND JUDGMENT (Dk. 38).**

Hartford asks for the judgment to be amended to specify that the benefits are reinstated retroactively for the "own occupation" period of the group disability plan ("GDP") from January 1, 2006, through November 27, 2006, and that the case be remanded to the plan administrator for a determination whether the plaintiff is eligible to receive disability benefits beyond November 27, 2006, under the GDP's "any occupation" definition of disability.  Hartford complains that the court's judgment is "somewhat ambiguous" and could be interpreted as reinstating benefits to the present. (Dk. 38, p. 1).  Hartford characterizes the plaintiff's lawsuit as claiming only that Hartford wrongfully terminated disability benefits during the initial 24-month period of "own occupation" disability.  Hartford denies having made a determination of the plaintiff's disability under the "any occupation" definition which could be judicially reviewed.

The plaintiff opposes the defendant's motion arguing the defendant has waived this argument by not raising it until after the district court granted the plaintiff's motion for summary judgment.  The plaintiff says his lawsuit was not limited to the 24-month "own occupation" disability

period and cites his prayers for back benefits and future benefits alleged in his filed complaints and in his contentions in the pretrial order.  In the alternative, the plaintiff summarily contends that the medical opinions of Dr. Mahon sustain a finding of complete and permanent disability as of October 2005 and that there is no evidence to show the plaintiff's condition has improved subsequently.  Finally, the plaintiff contends manifest injustice would result from an amended judgment, for the defendant is unable to present exceptional circumstances to warrant changing the summary judgment ruling.

The ambiguity in the court's judgment that Hartford is now challenging was not an oversight.  The judgment was intentionally written to be ambiguous, because neither party had plainly articulated and argued this distinction in disability periods in the summary judgment filings. Indeed, Hartford did not raise this issue in its summary judgment filings except for quoting the full definition of disability from the GDP.  Boggio's filings did not frame his relief so as to preserve this distinction but rather asked for restoration of all "right and benefits under the policy, including payments of disability benefits since January 1, 2006."  (Dk. 30, p. 33).

The court fully understood that the particular decision on review

3

was Hartford's termination of benefits in December of 2005.  When Hartford terminated benefits, the defendant was receiving a monthly benefit payable during the first 24 months for being unable to perform the material and substantial duties of his regular job.  After this 24-month period, long term disability benefits under the plan were payable only if the claimant was "continuously unable to engage in any occupation for which" he is or becomes "qualified by education, training or experience."  (Dk. 36, p. 3).  In short, Hartford's decision to terminate benefits in December of 2005 was based and reviewed against one standard or definition of disability, but the decision to continue paying benefits after the initial 24 months would be subject to a different standard or definition of disability.

Though it understood how the GDP distinguished between disability periods and standards and what decision was before the court for review, this court does not make it a practice of presuming the parties' positions on the proper scope of the reinstatement of disability benefits remedy.  The court believed this approach was particularly appropriate here for several reasons.  First, the summary judgment filings were silent on this issue.  Second, the pretrial order did not plainly limit reinstatement of benefits to the "own occupation" period of disability.  Third, relevant parts

4

of the administrative record clouded this issue.  In particular, Hartford's final

decision on December 4, 2006, included the following statements:

> We have determined that The Company's decision to deny continued
> benefits beyond 1/1/06 was correct.
>
> . . . .
>
> When reviewing the information presented, we considered your self-
> reported symptoms and to what extent the findings on physical
> examination and testing results confirm the symptoms.  We also
> considered the impact the findings would have as far as your ability to
> function on a daily basis and how it would continuously affect your
> ability to perform "any" occupational work activity.
>
> To briefly summarize, you stopped work on 8/18/04 as an
> Administrative Coordinator due to Vertigo.  The issue at hand is
> whether you continue to meet the definition of "Disability" as defined
> in the terms of the policy.
>
> A pro-active review was conducted that included obtaining updated
> medical information, surveillance, and review by Independent Medical
> Consultants.  Following the review, your benefits were terminated as
> of 1/1/06 as the evidence did not document you would be precluded
> from functioning at a full-time sedentary to light occupation.
>
> . . . .
>
> . . . Therefore, Appeals finds you retain the functional ability to
> perform at least sedentary-type work activity and find that the prior
> decision of December 20, 2005, to be accurate.  As of 1/1/06 there
> are no further benefits payable.

(Dk. 27, Admin. Rec. ("AR") at B0058-B0060) (underlining added).  Thus,

the court purposely chose to be vague in setting forth the reinstatement

award expecting this would be the subject of post-judgment motions.

In seeking to amend the judgment, Hartford argues that the decision on review involved only the "own occupation" provision, that the reinstatement of benefits must be limited to this 24-month provision, and that a remand to the plan administrator is required for it has made no determination of disability under the "any occupation" provision.  Hartford believes *Pakovich v. Broadspire Services, Inc.*, 535 F.3d 601 (7th Cir. 2008) is instructive here.  Pakovich challenged the administrator's termination of benefits during the 24-month "own occupation" period of disability.  While finding that the administrator's termination of these benefits was arbitrary and capricious, the district court also took on the issue of the plaintiff's entitlement to benefits under the "any occupation" standard and held for the plan administrator.[1]   The plaintiff appealed, and the court of appeals reversed:

---

[1]The Seventh Circuit summarized the district court's holding in this way:

> [T]he district court . . . went on to determine for itself whether Pakovich was also entitled to benefits under the "any occupation" standard.  The court, in a brief paragraph, stated that the evidence in the record indicated that Pakovich could perform at least sedentary work, and accordingly, found that Pakovich did not qualify for disability benefits after July 2004, and thus entered judgment for Broadspire.

535 F.3d at 603.

Pakovich thus contends that in order for her disability benefits to be denied beyond the 24 month mark under the "any occupation" standard, it was necessary for Broadspire to provide specific reasons why she was not deemed to be "prevented from . . . any Gainful Occupation . . .," something which indisputably did not occur.

Broadspire argues that the rule contemplated by Pakovich is unworkable, since it would require plans denying benefits under an "own occupation" standard to also expend their resources evaluating participants under the "any occupation" standard, solely in anticipation of a possible reversal on the "own occupation" issue on appeal.  According to Broadspire, such a rule would inappropriately require it to make a determination that had not yet ripened for consideration, since the rule would mandate that plans make determinations under the "any occupation" standard prior to that standard first being triggered by 24 months of disability under the "own occupation" standard.

We agree with Broadspire that it is unnecessary for plans to hedge their bets on a possible reversal on appeal by requiring that, after a plan has already found that an employee does not qualify for disability benefits under the "own occupation" standard, it also must determine whether the employee is disabled from "any occupation." Requiring this further analysis would be impractical and redundant.
. . . .
. . . Here, the Plan Administrator did not issue any decision on Pakovich's eligibility under the "any occupation" standard, which, like the former example above, left the district court with nothing to review.  Although, based upon scattered information in the record, the district court was able to piece together its conclusion that Pakovich was physically capable, . . . , there was no decision by the Plan Administrator for the Court to review and the record was not fully developed on this issue.  We therefore adopt the first part of the Eighth Circuit's rule for this Court, holding that when the plan administrator has not issued a decision on a claim for benefits that is now before the courts, the matter must be sent back to the plan administrator to address the issue in the first instance.

535 F.3d at 604-05, 607.  As argued by the defendant, this decision is

particularly instructive on whether a court should decide a disability claim not yet decided by the plan administrator.  It also offers sound reasoning for why a plan administrator should not be expected to address the "any occupation" standard when that standard is not yet applicable and when the administrator has already denied disability under the more lenient "own occupation" standard.

Relying on what he believes to be a similar case, *Paese v. Hartford Life Accident Ins. Co.*, 449 F.3d 435 (2nd Cir. 2006), Boggio contends Hartford waived this issue of no benefit determination under the "any occupation" standard by waiting to raise it after the court's summary judgment ruling.  Paese challenged Hartford's termination of long-term disability payments under the "own occupation" standard.  Hartford finally resolved Paese's administrative claim for disability benefits after the "own occupation" period had ended and the "any occupation" had begun.  The district court found Paese disabled under both the "own occupation" and "any occupation" standards.  The parties then disputed the amount of benefits owed, and the district court resolved this dispute.  On appeal to the Second Circuit, Hartford argued that Paese had not exhausted his administrative remedies on benefits under the "any occupation" standard.

8

The appellate panel held that the exhaustion requirement was not

jurisdictional but was an affirmative defense and that Hartford had waived

this issue by never raising it before the district court.  The panel also held

that even if it this issue had been preserved, Hartford would be estopped

from raising this defense.  The court noted:

> Hartford's correspondence in effect told Paese that its final administrative determination would encompass both the own occupation and any occupation standards. . . .
> . . . . Thus, Paese's correspondence clearly alerted Hartford that one of his multiple concerns was his total disability under the any occupation standard.
> Hartford did not disabuse Paese of his belief that his disability under the any occupation standard was a legitimate concern in his administrative appeal. . . .  This final determination, by its own terms evaluated Paese's disability condition up until the *present-i.e.*, March 20, 2002-which Paese reasonably read to mean that Hartford evaluated Paese's disability according to the applicable any occupation standard which applied at that time (post-March 8, 2002). If Hartford did not want to convey to Paese the mistaken impression that his eligibility under the any occupation standard was at issue in its final decision on his appeal, it should have written him a different letter.  If Hartford wanted to preserve its rights to make a later determination on under the any occupation standard, it also should have written him a different letter.  Instead, Hartford told Paese that he had no further administrative remedies, and there was nothing left for him to appeal.

449 F.3d at 447-48.  The plaintiff Boggio relies on the *Paese* decision only

to argue the waiver against Hartford in its failure to raise this issue prior to

the district court's summary judgment ruling.  Boggio does not argue the

equitable estoppel issue in *Paese,* nor does he offer any facts similar to those discussed in *Paese* on that issue.

Boggio contends Hartford was aware of his claim for "past and future benefits" as made in his complaints and preserved as a contention in the pretrial order.  (Dk. 40, p.3 n.2).  Boggio argues:

> Defendant failed to raise this issue despite the numerous opportunities to do so.  Defendant could have raised that defense in the Pretrial Order or in its Motion for Summary Judgment.  By failing to raise this issue until after the Court has ruled in the Plaintiff's favor, Defendant has waived this defense.

(Dk. 40, p. 3) (footnote and citation omitted).

Hartford's actions in the instant case are not of the same nature and degree as Hartford's actions taken in *Paese* that were treated as a waiver.  In *Paese*, the plaintiff sought "future benefits up until the time of his death based on his permanent disability."  449 F.3d at 446.  The district court in *Paese* determined disability under the "any occupation" standard and awarded damages under that benefit provision, and Hartford did not file any objection in the district court to its use of that disability standard and the related benefit provision.  In fact, Hartford continued to litigate before the district court the proper calculation of past and future benefit payments without ever taking issue with the court's disability finding under

the "any occupation" standard.  Put simply, prior to its appeal, Hartford did

not challenge the district court's consideration of the "any occupation"

standard.

Unlike *Paese*, Boggio's claim in the pretrial order relies

exclusively on the "own occupation" standard:

> Defendant's disability plan insuring the plaintiff promises to pay
> disability benefits to the plaintiff if plaintiff is totally disabled.
>
> > Total disability is defined by the plan as:
> > "injury or sickness (which causes a physical or mental
> > impairment to such a degree of severity that you are:
> > 1.   Continuously unable to perform the material and
> >      substantial duties of your regular occupation; and
> > 2.   Not working for wages in any occupation for which you
> >      are or become qualified by education, training, or
> >      experience."
>
> Plaintiff has supported his claim with reports from his
> physicians.

(Dk. 24, pp. 4-5).  The pretrial order reflects the plaintiff's claim for "past

due benefits as of the date of the trial court's decision" but qualifies the

remedy of reinstatement as "subject to the applicable terms and conditions

of the Plan, as they become due."  (Dk. 24, p. 13).  Hartford also preserved

its defense against "unlimited future benefits, inter alia, the possibility of

future recovery from any disability conditions (the existence of which is

denied), as well as the effect of different Plan requirements, exclusions

11

and/or limitations." (Dk. 24, p. 11). Because the pretrial order "controls the course of the action," Fed. R. Civ. P. 16(d), the court puts controlling weight on the plaintiff's decision to define his claim by sole reference to the "own occupation" standard. Additionally, the defendant appears to have preserved this defense in the pretrial order.

The most important difference from *Paese* is that the district court here did not apply the "any occupation" standard and did not decide whether the plaintiff was entitled to benefits under that standard. The court limited its review to Hartford's decision to terminate benefits in December 2005 which had used the "own occupation" disability provision. (Dk. 36, pp. 24, 28, 49). As noted above, the parties' summary judgment filings did not highlight the two different standards and did not attempt to apply both to the facts of the case. Upon entry of the district court's judgment, Hartford timely moved to alter and amend the judgment so as to limit the disability benefits' award to the "own occupation" provision and to have the case remanded for a determination under the "any occupation" standard. Hartford here did not wait until the appeal to raise the propriety of damages under the "any occupation" disability provision. The court concludes that Hartford has not waived this issue in waiting to raise it in the motion to alter

and amend judgment.

Alternatively, the plaintiff insists  he has proved a disability under the "any occupation" standard based on Dr. Mahon's opinion that he was completely and permanently disabled as of October 2005 and based on the lack of evidence to show his condition has improved subsequently. As noted above, the plaintiff did not plainly and clearly articulate and argue such a claim in his summary judgment motion.  Nor did the court consider and decide such a claim in its summary judgment order.  The plaintiff has not filed a timely motion seeking such relief and has not come forward with sufficient evidence of record to sustain the merits of his position, both procedurally and substantively.  The plaintiff's alternative contention is without merit.

For a motion to alter and amend judgment under Rule 59(e) to prevail, it must seek either to correct a manifest error of law or to present other evidence that has been newly discovered.  *Loughridge v. Chiles Power Supply Co., Inc.*, 431 F.3d 1268, 1274 -1275 (10th Cir. 2005). Hartford's motion addresses a manifest injustice created by an ambiguous judgment.  The court intentionally allowed this ambiguity to preserve the parties' opportunity to present their positions on an issue they had failed to

13

address in their motions.  The record establishes both that Hartford has not rendered a decision on whether Boggio is entitled to benefits under the "any occupation" standard and that the only decision challenged on review by this court was Hartford's termination of benefits in December of 2005. The court in ruling on the parties' motions for summary judgment did not address the plaintiff's entitlement to disability benefits under this latter standard.  This issue of entitlement must be sent back to the plan administrator to address in the first instance.  Thus, the court grants Hartford's motion to alter and amend the judgment to specify that disability benefits are reinstated retroactively for the "own occupation" period from January 1, 2006, through November 27, 2006.[2]  The judgment also shall provide that the case is remanded to the plan administrator for a determination whether the plaintiff is eligible for benefits after November 27, 2006, under the "any occupation" standard.


**MOTION FOR PREJUDGMENT INTEREST (DK. 39)**

---

[2]It appears from Hartford's Benefit Management Services report that Boggio was found disabled under the own occupation provision in July of 2005 with payments payable as of November 26, 2004.  (Dk. 27, AR at B0024).  Thus, this explains the expiration of the 24-month disability period on November 27, 2006.

14

The plaintiff seeks prejudgment interest at the rate of 10% on the unpaid benefits.  The plaintiff argues the presumption favoring an award of prejudgment interest and points to the loss of monetary value he has sustained.  Finally, the plaintiff asks the court to use the prejudgment rate of 10% applied in Kansas and used by other federal courts.  Hartford does not challenge the court's discretionary authority to consider an award of prejudgment interest and to determine the applicable rate.  Citing case law from other federal circuits, Hartford advocates using the post-judgment interest rate in 28 U.S.C. § 1961in lieu of the Kansas rate on prejudgment interest.

Prejudgment interest is appropriate in ERISA cases when it "serves to compensate the injured party and . . . is otherwise equitable." *Allison v. Bank One-Denver*, 289 F.3d 1223, 1243 (10th Cir. 2002) (citations omitted).  The award of prejudgment interest is committed to the court's sound discretion as an appropriate equitable relief.  *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008).  There seems no serious debate here that prejudgment interest would be an appropriate and fair compensation for the plaintiff's loss of use of these monthly benefit payments.  *See Caldwell v. Life Ins. Co. of North America*, 287 F.3d 1276,

15

1286 (10th Cir. 2002) ("The rule in this circuit is that prejudgment interest is

generally available to compensate the wronged party for being deprived of

the monetary value of his loss from the time of the loss to the payment of

the judgment." (internal quotation marks and citations omitted).  An award

of prejudgment interest here equitably meets the goal of full compensation

for a plaintiff who has timely pursued his claim for relief under ERISA.  *Id.*

      The court now must calculate an appropriate rate of interest.

The Tenth Circuit in *Weber* recently summarized the law on determining

the interest rate:

> Calculation of the rate for prejudgment interest also "rests firmly
> within the sound discretion of the trial court."  *Caldwell v. Life Ins. Co.
> of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002); *id.* at 1287-88
> (rejecting argument that 28 U.S.C. § 1961(a) rate should be applied
> in context of ERISA claim for prejudgment interest).  Courts
> commonly look to state statutory prejudgment interest provisions as
> guidelines for a reasonable rate.  *See, e.g., Allison*, 289 F.3d at 1244
> (holding that "district court did not abuse its discretion in awarding
> prejudgment interest at the Colorado statutory rate of 8 percent"); *cf.
> Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 224-25 (1st
> Cir. 1996) (noting that because "ERISA is inscrutable on the subject"
> of the appropriate rate of prejudgment interest, "courts have
> discretion to select an appropriate rate, and they may look to outside
> sources, including state law, for guidance").
>     Nevertheless, this court has "held squarely that punitive
> damages are not available in an ERISA action" and that "an
> excessive prejudgment interest rate [which] would overcompensate
> an ERISA plaintiff, thereby transform[s] the award of prejudgement
> interest from a compensatory damage award to a punitive one."
> *Allison*, 289 F.3d at 1243 (quoting *Ford v. Uniroyal Pension Plan*, 154

F.3d 613, 618 (6th Cir.1998)).

Here, the district court looked to Oklahoma law to determine the appropriate rate of prejudgment interest.

541 F.3d at 1016.  The panel in *Weber* found the district court did not

abuse its discretion in using the 15% interest rate suggested in Oklahoma

law when an insured prevails against an insurance company.  *Id.* at 1017.

The panel cited other circuit decisions upholding interest rates ranging from

12% to 18%.  *Id.* (citations omitted).

In the exercise of its discretion, the court finds that an

appropriate rate of prejudgment interest is the 10% rate set out in the

Kansas prejudgment interest statute, K.S.A. § 16-201.  As noted above, the

Tenth Circuit in *Caldwell* rejected strict reliance on 28 U.S.C. § 1961 since

it applies to post-judgment interest, and "[m]any circuits have held that

courts are not required to use section 1961 in calculating prejudgment

interest . . . ."  287 F.3d at 1287.  The court also finds that the Kansas

prejudgment interest rate more adequately compensates the plaintiff for the

benefit payments that were withheld. The court finds that the prejudgment

interest is awarded at the rate of 10% compounded annually running from

the date that each monthly benefit payment was due, commencing January

1, 2006, and for each subsequent month payable through November 27,

17

2006, through the date of this amended judgment.  *See Caldwell*, 287 F.3d at 1287.

IT IS THEREFORE ORDERED that Hartford's motion to alter and amend judgment (Dk. 38) is granted and the clerk of the court is directed to enter an amended judgment that provides:  "the defendant is ordered to reinstate retroactively for the 'own occupation period' from January 1, 2006, through November 27, 2006, all disability benefits payable and rights under the GDP subject to all applicable set-offs (Social Security, Workers' Compensation, etc.) as provided therein.  The case is remanded to the plan administrator for a determination whether the plaintiff is eligible for benefits after November 27, 2006, under the 'any occupation' standard."

IT IS FURTHER ORDERED that Boggio's motion for prejudgment interest (Dk. 39) is granted and clerk shall enter judgment reflecting that prejudgment interest is awarded at the rate of 10% compounded annually running from the date that each monthly benefit payment was due, commencing January 1, 2006, and for each subsequent month payable through November 27, 2006, through the date of this amended judgment.

18

Dated this 28th day of May, 2009, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge